UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA ELLIS,

      Plaintiff,

v.

CHASE HOME FINANCE, LLC,
JPMORGAN CHASE BANK, N.A.,
DEUTSCHE BANK NATIONAL
TRUST COMPANY, as Trustee, and
UNKNOWN TRUST, the currently
unknown asset-backed security at issue,

      Defendants.

Case No. 14-11186
Honorable Laurie J. Michelson
Magistrate Judge Michael J. Hluchaniuk

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [4]**

---

Plaintiff Barbara Ellis seeks relief following the foreclosure of her South Rockwood, Michigan property after she defaulted on the mortgage. Her lawyer filed in state court his cookie-cutter complaint against Defendants Chase Home Finance, LLC, JPMorgan Chase Bank, N.A., DeutscheBank National Trust Company, and an Unknown Trust. (Dkt. 1-1). The twenty-two count, 269-paragraph complaint alleges numerous violations of federal and state law in the servicing, management, and foreclosure of Ellis' home. Defendants removed the action to this Court (Dkt. 1) and filed a motion to dismiss shortly thereafter. (Dkt. 4.) Having carefully reviewed the briefing, the Court finds that oral argument will not aid in resolving the pending motion. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the motion is granted.

## I.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. ALLEGATIONS OF THE COMPLAINT

On February 27, 2004, Ellis and Washington Mutual Bank executed a note and a mortgage as security for a $240,000 loan to purchase real property in South Rockwood, Michigan ("the Property"). (Compl. Ex. A.) Washington Mutual became defunct after the 2008 financial collapse. The mortgage was thus transferred to a trust consisting of a pool of former

Washington Mutual mortgages, with Deutsche Bank acting as trustee. (*Id.* at ¶¶ 27–28.) The Federal Deposit Insurance Corporation ("FDIC") reassigned the servicing of Ellis' mortgage to JPMorgan Chase. (*Id.* at ¶¶ 21–25; Compl. Ex. AA, Assignment.) Attached to the Complaint is a document stating that the assignment was recorded on May 11, 2012, in the Monroe County Register of Deeds. (Assignment at PageID 256.) Ellis alleges that the signatures on the assignment were forged by "robo-signers." (*See* Compl. ¶¶ 68–79.)

The Complaint alleges misconduct by Washington Mutual as early as 2007. Specifically, the terms of the mortgage required that Ellis maintain an escrow fund for taxes, insurance, and other "Escrow Items." (Compl. Ex. A, Mortgage Agreement, at PageID 83.) The mortgage also required that Ellis purchase insurance for the property, and provided that if Ellis did not purchase insurance, the Lender would be able to obtain coverage "through any company acceptable to Lender, including, without limitation, an affiliate of lender . . . ." (*Id.* at PageID 85.) Ellis says that Washington Mutual abused these provisions by placing two flood insurance policies on the Property at the same time. (Compl. ¶¶ 17, 19.) She alleges that Chase continued this misconduct after receiving the assignment. (*Id.* at ¶ 33.) She says that Chase failed to pay mandatory hazard insurance premiums, replaced her original policy with a more expensive one, and that eventually she purchased her own hazard insurance at half the cost of Chase's chosen policy. (*Id.* at ¶¶ 43–47.) She attached documentation of these policies to her Complaint. (*See* Compl. Ex. M, N.)

Although Ellis made her mortgage payments on time for several years (Compl. ¶ 32), in 2009, she suffered an "economic hardship" and began working with Chase to modify her loan. (*Id.* at ¶ 38.) The Complaint characterizes this process as "Paperwork Hell."[1] (*Id.* at ¶ 55.) Ellis

---

[1] Chief Judge Gerald E. Rosen of this District delivered a stern warning to Gantz Associates, the attorneys representing Ellis here, regarding their oft-advanced, consistently-rejected "Paperwork Hell" theory in March of this year. Chief Judge Rosen advised Gantz

3

says that Chase told her that the only way she could obtain a modification would be to intentionally fall behind on her payments, which she did. (*Id.* at ¶¶ 39–40.) On February 16, 2010, Ellis received a letter from Chase offering a modification. (Compl. Ex. L, Correspondence, PageID 156.) The letter advised that to take advantage of the modification, she would need to allow Chase to access her most recent tax return, verify her income, sign several forms, and make her first modified payment before April 1, 2010. (*Id.* at PageID 159.)

By signing the Agreement, Ellis acknowledged that the modification would not take effect "unless and until Lender has confirmed my eligibility for this program, I have returned any required verification documents requested by Lender, and the Lender signs and returns a copy to me." (*Id.* at PageID 160.) Ellis signed the form and has attached it to the Complaint. (*Id.* at PageID 162.) But there is no signature from a Chase representative, nor does Ellis allege that she received a copy of the agreement with a signature from a Chase representative. (*Id.*)

Over the next year, Chase sent Ellis at least four letters requesting information necessary to complete her loan modification. On May 10, 2011, Chase sent Ellis a letter acknowledging her interest in a loan modification and informed her that she would need to submit additional documentation to allow Chase to process her request. (Compl. Ex. R at PageID 176.) Chase sent another request for documentation on August 30, 2011. (*Id.* at PageID 177.) On February 21, 2012, Chase sent a third letter requesting information. (*Id.* at PageID 179.) Ellis explained her failure to provide the required documentation as follows: "Income taxes for my mother's estate

---

Associates that "consistently advancing the same rejected legal theories borders on sanctionable and ethical misconduct." *Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 958 (E.D. Mich. 2014). He pointed out that Gantz Associates had filed at least forty-five complaints alleging the "Paperwork Hell" theory, none of which had survived motion practice. *Id.* Regrettably, the present Complaint, filed on March 20, 2014, is no different. (Compl. ¶¶ 53–62.) In fact, the "Paperwork Hell" allegations appear to have been cut-and-pasted from the Complaint in *Thill*. (*Compare* Compl. ¶¶ 53–62, *with* Compl. ¶¶ 30–36, *Thill v. Ocwen Loan Servicing, LLC*, No. 13-cv-14151 (E.D. Mich. Sept. 27, 2013), ECF No. 1.)

and myself have not been filed for three years due to our documented illness. When I discussed this with the IRS . . . they requested that all back taxes for both my mother and myself be filed together and they are two thirds done. . . . I hope to finish, submit to my CPA and file before the end of March (if not sooner)." (*Id.* at PageID 182.) On May 18, 2012, Chase sent a fourth letter instructing Ellis to submit the outstanding documentation within fifteen days, stating that if Ellis did not return the documentation, her request for a modification would be canceled. (*Id.* at PageID 196.)

> On June 3, 2012, Ellis sent a letter to Chase with the following requests:
>
> [I]f a loan modification cannot be made, I request that we short sale this property. If a short sale cannot be done, then I officially request that the property be returned to Chase as 'deed in lieu.' If for some reason, the federal government's onus to perform 'deed in lieu' over foreclosure cannot be honored, I suggest that we creatively work out some circumstance where I remain in the property until it sells.

(*Id.* at PageID 198.)

On July 23, 2012, Chase notified Ellis that she was not eligible for a loan modification under the Home Affordable Modification Program ("HAMP"). (*Id.* at PageID 201.) So Ellis chose to pursue a short sale, which Chase preliminarily approved on February 4, 2013. (*Id.* at PageID 228.) Ultimately, Ellis informed Chase that she did not want to go through with the short sale because of the potential buyer's alleged hostility towards her. (*Id.* at PageID 218–20.) She noted that the buyer's behavior had "made a sheriff's sale the more attractive option." (*Id.* at PageID 219.)

The foreclosure process moved forward and Chase purchased the Property at a sheriff's sale on August 1, 2013. (*See* Compl. Ex. X.) The Sheriff's Deed provided that February 1, 2014 would be the last day to redeem the Property. (*Id.* at PageID 233.)

Ellis failed to do so, instead filing this lawsuit on February 27, 2014. (*See* Compl.) She claims that Defendants violated the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, and Michigan state law. (*See generally id.*) Defendants removed the case to this Court on March 20, 2014 (Dkt. 1) and filed their Motion to Dismiss on April 16, 2014 (Dkt. 4). Ellis then filed a Motion to Remand (Dkt. 9), which the Court denied on June 6, 2014 (Dkt. 15).

## III. ANALYSIS

Ellis alleges numerous claims under state and federal law. Many of these theories are familiar to the judges of this District and have been roundly rejected. Ellis' Complaint meets the same fate.

### A. Claims Against the Trustee

As an initial matter, the Court agrees with Defendants that the Complaint is wholly devoid of actionable allegations regarding Deutsche Bank's conduct as Trustee. Ellis describes the 2008 financial crisis in some detail in her Complaint. (*See, e.g.*, Compl. ¶¶ 24–39.) While she accuses Deutsche Bank of obtaining a financial benefit from her default, she does not state how that benefit fits into any of her twenty-two counts. Indeed, Ellis responds to Defendants' motion by stating that the Complaint states a claim against Deutsche Bank because Deutsche Bank participated in a "fraudulent conspiracy" to force her into foreclosure. (Pl.'s Resp. Br. at 5.) The Court finds that Ellis' accusations against the Trustee amount to an "industry-wide conspiracy" theory that is not sufficiently particularized to give rise to claims against the Trustee itself. *Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857, 863 (E.D. Mich. 2009). Therefore, the Court will dismiss the Complaint in its entirety as to Deutsche Bank and now turns to whether Ellis has stated a claim against Chase.

6

**B. Expiration of the Redemption Period**

In Michigan, foreclosures by advertisement are governed by statue. Mich. Comp. Laws § 600.3204. The statutory scheme "provides certain steps that the mortgagee must go through in order to validly foreclose" and "controls the rights of both the mortgagee and the mortgagor once the sale is completed." *Conlin v. Mortg. Elec. Regis. Sys.*, 714, F.3d 355, 359 (6th Cir. 2013) (citation omitted). Once a sheriff's sale is completed, the mortgagor is afforded a six-month period in which he or she may redeem the property. Mich. Comp. Laws § 600.3204(8); *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949, 951 (6th Cir. 2012).

After the redemption period expires, "all of [a] plaintiff's rights in and title to the property [are] extinguished." *Bernard v. Fed. Nat. Mortg. Ass'n*, -- F. App'x --, 2014 WL 4800123, at *2 (6th Cir. Sept. 29, 2014) (quoting *Bryan v. JPMorgan Chase Bank*, 848 N.W.2d 482, 485 (Mich. Ct. App. 2014)). Therefore, "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Conlin*, 714 F.3d at 359 (6th Cir. 2013) (quoting *Schulthies v. Baron*, 167 N.W.2d 784, 785 (Mich. 1969)). And "not just any type of fraud will suffice. Rather, the mortgagor's claim of fraud must relate to the sheriff's sale itself, not to underlying equities, if any, bearing on the instrument . . . ." *Bernard*, 2014 WL 4800123, at *2.

Even if the mortgagor can establish all of the foregoing, a court will only set aside the foreclosure if she can establish prejudice stemming from the fraud or irregularity. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). Indeed, *Kim* "made clear that failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void ab initio) but merely voidable."

*Conlin*, 714 F.3d at 361 (citing *Kim*, 825 N.W.2d at 337). "To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, 825 N.W.2d at 337.

In this case, the redemption period ended on February 1, 2014. Accordingly, for the Court to set aside the sheriff's sale, Ellis must allege facts to show fraud or irregularity in the mortgage foreclosure process and prejudice to her stemming from the alleged fraud or irregularity. With this standard in mind, the Court turns to the Complaint.

### C. Count I – Violation of Michigan Compiled Laws § 600.3204(1) and (3)

In Count I, Ellis asserts that the foreclosure was invalid under Michigan Compiled Laws 600.3204(3), which states that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." She says that the assignment to Chase was a forgery executed by "robo-signers" and is therefore invalid. (Compl. ¶¶ 105, 108.)

Defendants rely on *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010), for "the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment." (Def.'s Br. at 11.) In that case, "the Sixth Circuit recognized that an obligor may assert certain defenses which may render an assignment void, but that these defenses exist to protect the obligor from a potential double liability . . . ." *Wiggins v. Argent Mortgage Co., LLC*, 945 F. Supp. 2d 817, 821 (E.D. Mich. 2013). Thus, there is an "exception" to the rule in *Livonia* where a third party to an assignment asserts defenses such as "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, all of which give the obligor standing because there

was a possibility of having to pay the same debt twice.*" Connolly v. Deutsche Bank Nat. Trust Co.*, 581 F. App'x 500, 500 (6th Cir. 2014). That is, in order for a third party to challenge an assignment, the third party must have "a genuine claim" that she might be "subject to double liability on the debt." *Keyes v. Deutsche Bank Nat. Trust Co.*, 921 F.Supp.2d 749, 757 (E.D. Mich. 2013).[2]

Ellis articulated two arguments as to her standing to challenge the foreclosure: irregularities in securitization of the mortgage and fraud via robo-signing. Neither persuade. First, "courts have repeatedly rejected" claims that defects in the securitization of a loan renders a foreclosure invalid and, furthermore, Michigan law is now well established that "splitting of the note and mortgage does not invalidate a foreclosure." *See Ross v. Wells Fargo Bank, N.A.*, No. 1:14-CV-627, 2014 WL 5390659, at *4 (W.D. Mich. Oct. 22, 2014) (collecting cases). And as to the alleged robo-signing, the Sixth Circuit has held such claims do not negate Michigan statutory law stating that the "mortgagee of record . . . has the power to foreclose the mortgage." *Connolly*, 581 F. App'x at 500; *see also* Mich. Comp. Laws § 600.3204(d). The recorded assignment Ellis attached to her Complaint shows that Chase is the mortgagee of record, therefore Ellis' argument regarding Chase's authority to foreclosure fails. Furthermore, "[g]rounds that render an assignment merely voidable, including fraud, cannot be challenged by the debtor because the debtor's interest in protecting themselves from having to pay the same

---

[2] Defendants, not Ellis, pointed out this exception in a footnote in their brief. (Def.'s Mot. at 11 n.4.) Defendants correctly note that if the mortgage and the note are in different hands, there may be a possibility of double recovery. *See, e..g.*, *Keyes*. 921 F.Supp.2d at 757 (citing *Residential Funding Co., LLC v. Saurman*, 805 N.W.2d 183 (Mich. 2011)). However, Ellis does not plead that Deutsche Bank has "sought or threatens to seek payment" from her; therefore, her claims do not fall within this exception. *Etts v. Deutsche Bank Nat. Trust Co.*, No. 4:13-CV-11588, 2014 WL 645358, at *7 (E.D. Mich. Feb. 19, 2014) (dismissing a similar claim).

debt twice is not present." *Boone v. Seterus, Inc.*, No. 13-CV-13457, 2014 WL 1460984, at *4 (E.D. Mich. Apr. 15, 2014).

Moreover, as noted by the Court in *Conlin*, "*Kim's* holding makes § 600.3204 defects actionable to the same extent that notice defects under Mich. Comp. Laws § 600.3208 are—only on a showing of prejudice." 714 F.3d at 361–62. And here, Ellis has not alleged any harm stemming from the alleged robo-signing. Indeed, for all its detail regarding Defendants' alleged robo-signing practices, her Complaint utterly fails to "suggest how this practice might have impaired [her] opportunity to achieve a loan modification or otherwise avoid a foreclosure sale of the Property." *Donahue v. Fed. Nat. Mortgage Ass'n*, No. 13-10205, 2014 WL 1305017, at *7 (E.D. Mich. Mar. 31, 2014). Count I does not state a claim.

### D. Count II – Violation of Michigan Compiled Laws §§ 600.3204(4), 600.3205a, and 600.3205c

Ellis next asserts that Defendants failed to comply with mandatory procedures relating to loan modifications, Michigan Compiled Laws §§ 600.3204(4), 600.3205a, and 600.3205c. (Compl. ¶ 131.) These sections, when they were in existence,[3] provided for pre-foreclosure review of mortgages to determine whether the borrower would qualify for a loan modification.

Aside from the fact that the statutes have been repealed, the Complaint fails to state a claim. Specifically, Ellis' bare assertions that she complied with the statute by "contact[ing] the foreclosing law firm" to initiate the modification process and that Defendants violated the statute by ignoring her are contradicted by the exhibits. *See also Thill*, 8 F. Supp. 3d at 954 (dismissing

---

[3] All three of these statutory sections were repealed, in 2012 and 2013. *See* 2014 Mich. Leg. Serv. P.A. 125 (HB 5277) (West) (repealing section 600.3204(4)); Mich. Comp. L. § 600.3205e (repealing sections 600.3205a through 3205d). Michigan courts have questioned whether relief is available under these now-repealed provisions, even for claims arising while the statutes were still in effect. *Hardwick v. HSBC Bank USA, N.A., No. 310191*, 2013 WL 3815632, at *2 (Mich. Ct. App. July 23, 2013).

a similar claim and noting that "[s]imply articulating that Plaintiff complied with the statutory requirements and Defendants did not are legal conclusions that fall well short of *Twombly/Iqbal*").[4] It is unclear why Ellis believes that Chase never provided her with information related to loan modification when she attached to the Complaint numerous letters from Chase concerning her request for a loan modification. (*See, e.g.*, Compl. Ex. L at PageID 174.) Finally, even if Ellis had stated a claim for relief under these sections, "her only available remedy under Michigan law was conversion of the foreclosure by advertisement to a judicial foreclosure prior to the sheriff's sale." *Wilson v. HSBC Bank, N.A.*, -- F. App'x --, No. 13-2009, 2014 U.S. App. Lexis 22055, at *9 (6th Cir. Nov. 19, 2014); *see also Ross v. Fed. Nat. Mortgage Ass'n*, No. 13-12656, 2014 WL 3597633, at *5 (E.D. Mich. July 22, 2014). Ellis did not avail herself of this remedy, and so the Court is unable to set aside the foreclosure now. Accordingly, Count II is dismissed.

## E. The Statute of Frauds Bars Count XIII – Breach of Contract and Count XIV – Promissory Estoppel

In Counts XIII and XIV, Ellis seeks to enforce an alleged loan modification agreement. (Compl. ¶ 191 ("[T]here is a valid, binding Contract between the parties requiring Defendants to modify Plaintiff's loan . . . ."); Compl. ¶ 197 ("Plaintiff has detrimentally relied upon the promises of Defendants to modify the Loan . . . .").) Michigan's statute of frauds bars both of these claims because the loan modification agreement does not bear the signature of an authorized Chase representative. (*See* Compl. Ex. L.)

In Michigan, "certain types of agreements must be in writing before they can be enforced . . . . [and] [t]he burden of proving an enforceable agreement is even heavier when

---

[4] The opinion also contains a summary of Ellis' counsel's numerous misstatements of the Michigan loan modification statute's requirements, many of which are repeated in the present Complaint. *See Thill*, 8 F. Supp. 2d 953–55.

claiming against a financial institution." *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 920 (E.D. Mich. 2012). Michigan Compiled Laws § 566.132(2) provides in relevant part:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution: A promise or commitment to renew, extend, *modify*, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(emphasis added). Michigan courts read this provision as an "unqualified and broad ban" on actions, including promissory estoppel, that are premised on unwritten or unsigned promises by banks. *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (2000).

The fact that the alleged loan modification is not signed by Chase therefore forecloses the breach of contract and promissory estoppel claims. *See also Goss v. ABN AMRO Mortg. Grp.*, 549 F. App'x 466, 470 (6th Cir. 2013) ("In Michigan, a loan modification proposal 'd[oes] not ripen into a binding agreement' if the modification agreement bears the signature of the borrower but not the lender because such a proposal 'does not objectively reflect a meeting of the minds regarding the essential modification terms.'" (citing *Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841, at *7 (Mich. Ct. App. Dec. 22, 2011)).

Ellis responds to this well-settled principle by arguing that her unsigned loan modification contract is "essentially identical" to Trial Period Plan ("TPP") agreements that have been enforced where the borrower complies with the loan modification trial period terms. (Pl.'s Resp. Br. at 16.) Not so.

First, the alleged agreement attached to the Complaint does not appear to be a TPP but rather a permanent modification agreement. (*See* Compl. Ex. L at PageID 160.) But to the extent it could be construed that way, it still is not signed by a Chase representative, nor does it unconditionally promise that Ellis' loan would be modified. *See Fed. Home Loan Mortg. Corp.*

*v. Hassell*, No. 11–14564, 2013 WL 823241, at *6 (E.D. Mich. Mar. 6, 2013) (declining to enforce a TPP where "[n]either the Trial Plan nor the Partial Reinstatement Agreement unconditionally promises Plaintiff that her loan would be modified and neither document is signed by Wells Fargo"); *cf. Bolone v. Wells Fargo Home Mortg., Inc.*, 858 F. Supp. 2d 825, 828 (E.D. Mich. 2012) (enforcing a signed TPP agreement).

The few cases in which courts in this District have enforced unsigned TPPs are readily distinguishable. For example, an unsigned TPP was enforced in *Yates v. U.S. Bank Nat. Ass'n*, 912 F. Supp. 2d 478, 487 (E.D. Mich. 2012), where the "plaintiff alleged that: (1) defendants offered a TPP as step one in the HAMP program, (2) defendants sent the form agreement to plaintiff for her signature, (3) the plaintiffs signed the TPP and returned two copies to the lender, and (4) *the plaintiff made the monthly payments required by the TPP for (at least) the requisite three-month period*." (emphasis added). By contrast, Ellis pled no allegations that she made payments under a modified agreement, nor does she offer any allegations regarding her compliance with the conditions of the agreement. Accordingly, Counts XIII and XIV are dismissed.

### F.  Count XV – Breach of Contract ¶¶ 1–5 of Mortgage

In Count XV, Ellis alleges that Defendants breached the terms of the mortgage agreement by "failing to credit Plaintiff for payments made for escrow items, by failing to pay escrow items, by force-placing fake and ridiculously expensive and duplicative insurance policies on Plaintiff's account, and by foreclosing instead of cleaning up their own mistake." (Compl. ¶ 203.) To state a claim for breach of contract, Ellis must allege facts to show (1) the existence of a contract; (2) the terms of the contract; (3) that Defendants breached the contract; and (4) that

the breach caused her injury. *Webster v. Edward D. Jones & Co., LP*, 197 F.3d 815, 819 (6th Cir. 1999).

The problem for Ellis is that she has not pled facts to show that Defendants breached the mortgage agreement. Her allegations regarding Defendants' failure to credit her account fail because she has not even alleged that she made a payment, much less that Defendants failed to credit it or credited it in an erroneous manner under the terms of the contract. *See Boone v. Seterus, Inc.*, No. 13-CV-13457, 2014 WL 1460984, at *2 (E.D. Mich. Apr. 15, 2014) (quoting *Thill*, 8 F. Supp. 3d at 956 (citing similar claims filed by Gantz Associates that have been dismissed for the same reason by courts in this District)).

As to the insurance allegations, the mortgage agreement explicitly states that

If Borrower fails to maintain any of the coverages described above [including hazard insurance], Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

(Mortgage Agreement ¶ 5.) Ellis does not allege that she herself had purchased hazard insurance until August 2010; therefore, until that point, the plain language of the mortgage permitted Chase to purchase a policy of its choosing. Thus, though Ellis alleges that Chase placed more expensive hazard insurance on the property than she herself was able to obtain later, she does not explain how that action could be a breach of the unambiguous mortgage contract.

Ellis' allegation that Chase placed duplicative insurance policies on the property is contradicted by an exhibit to the Complaint showing that one of the policies was cancelled shortly after the second one went into effect. (Compl. Ex. M, at PageID 166; Comp. Ex. N, at PageID 168.) *See Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the

14

exhibit trumps the allegations."). Similarly, Ellis' allegation that Chase allowed hazard insurance on her home to lapse for the period between March 2 and May 18 is directly contradicted by the exhibit she attached to her complaint, which shows that Chase placed a new hazard insurance policy on the home effective March 1, 2010 and expiring March 1, 2011. (Compl. Ex. N, at PageID 168.)

In response to these arguments, Ellis merely quotes the conclusory allegations of her Complaint. (Pl.'s Resp. Br. at 19.) The Court does not take as true conclusory allegations. Count XV is dismissed.

### G. Fraud Claims – Counts XVI and XVII

In Count XVI, "Intentional Fraud," Ellis accuses Chase of "tricking her into foreclosure" by placing duplicative insurance policies on the home, offering her a loan modification that never materialized, and forging the assignment. (Compl. ¶¶ 208, 209, 214.) In Count XVII, Ellis converts Count XVI into a claim for "Constructive Fraud," alleging that Defendants made the alleged misrepresentations "without a purposeful design" to defraud her, but that Defendants should be forced to pay damages because "the representations were false and induced Plaintiff to . . . refrain from exercising her rights . . . ." (Compl. ¶¶ 240, 241.)

Insofar as these claims seek to enforce a loan modification, they are barred by the statute of frauds for the same reasons that Ellis' breach of contract and promissory estoppel claims fail. *See McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 835 (E.D. Mich. 2012) (adopting magistrate judge's finding that the statute of frauds barred claims of intentional and constructive fraud based on an alleged promise to modify a loan).

15

As to the other allegations, "[t]he elements constituting actionable fraud or misrepresentation are well-settled in Michigan." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815 (Mich. 1976).

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Id.* Moreover, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit "interpret[s] Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).

Here, Ellis fails to identify any representations made to her with respect to the alleged forgery or the duplicative insurance, the particular person or persons making the misrepresentations, or the time and place of the misrepresentations. Despite eighty-three paragraphs proclaiming fraud, Ellis has not managed to provide with sufficient particularity the "who, what, when, where, and how of the alleged fraud." S*anderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). For this reason as well, her fraud claims are dismissed.

**H. Count XX – Violation of Michigan's Regulation of Collection Practices Act, MCL § 445.251**

In Count XX, Ellis alleges that Chase violated Michigan's RCPA, Michigan Compiled Laws § 445.251. The act "prohibits abusive collection efforts . . . with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting Michigan Compiled Laws § 445.251(a)).

Ellis alleges various violations of the statute, including "[c]ommunicating with Plaintiff in a misleading or deceptive manner," "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt," "[c]ommunicating with Plaintiff when Plaintiff was actively represented by an attorney," "[c]ommunicating with Plaintiff without accurately disclosing the caller's identity," "[u]sing a harassing, oppressive, or abusive method to collect a debt," and "[f]ailing to implement a procedure designed to prevent a violation by an employee." (Compl. ¶ 258)

But these allegations merely parrot the statute without any factual detail and therefore do not state a claim upon which relief could be granted. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *Stroud v. Bank of Am., N.A.*, No. 13-10334, 2013 WL 3582363, at *10 (E.D. Mich. July 12, 2013) (dismissing a similarly deficient RCPA claim). Therefore, Count XX is dismissed.

**I. Count XXI – Michigan Fair Debt Collection Practices Act, MCL § 339.918**

In Count XXI, Ellis alleges that Chase violated the "Michigan Fair Debt Collection Practices Act" (in fact, the statutory section Ellis cites is part of the Michigan Occupational Code

("MOC")) by "fail[ing] to properly and completely give the validation notice required" by the statute and "ma[king] false threats to initiate legal action . . . ." (Compl. ¶ 264.)

Again, Ellis merely parrots the alleged violations from the statute without any supporting factual allegations. For this reason alone, the Court would dismiss her claim. But courts in this district have also dismissed similar claims because a "nationally chartered bank attempting to collect its own claims, i.e. mortgage debt," is "expressly exempt from the purview of the MOC." *McCann*, 873 F.Supp.2d at 849, *report and recommendation adopted*, 873 F.Supp.2d at 836. Count XXI is therefore dismissed.

### J.  Count XXII – Foreclosure by Unlicensed Corporation

Ellis has pled herself out of court in Count XXII. Her Complaint alleges Chase to be "a national banking association . . . which is authorized to conduct business and which does in fact conduct business within the jurisdiction of this Honorable Court" (that is to say, in Michigan) (Compl. ¶ 2), but, in Count XXII, she asserts that Chase is "not even authorized to conduct business in the State of Michigan!" (Compl. ¶ 267.) The inconsistent allegations of Count XXII do not state a claim upon which this Court can grant relief. *See Hensley Mfg. v. ProPride*, Inc., 579 F.3d 603, 613 (6th Cir. 2009) ("[I]f a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court." (quoting *Tregenza v. Great Am. Commc'ns Co*., 12 F.3d 717, 718 (7th Cir.1993)). Count XXII is therefore dismissed.

### K.  Claims under the Real Estate Settlement Procedures Act, Counts IV through IX and XI

Ellis asserted seven claims under RESPA in her Complaint, but in response to Defendants' motion, Ellis states that she "would agree to dismiss" Counts VI and XI. (Pl.'s Resp. Br. 14.) Accordingly, those claims are dismissed and the Court will address only the remaining RESPA claims.

18

Ellis first asserts claims under 12 U.S.C. § 2609, which provides certain requirements for the management of escrow accounts, including notice requirements and limitations on required deposits. *See generally* 12 U.S.C. § 2609(a). It empowers the Secretary of Housing and Urban Development to assess civil penalties for failure to comply with these requirements. 12 U.S.C. § 2609(d). As reflected in the briefing, there is conflicting case law among the circuits as to whether there is a private right of action to enforce § 2609(a). *Compare Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 925 n.8 (6th Cir. 1980) ("While the Act does not expressly provide for such a causes of action, we believe, based on the legislative history, that Congress intended to create a private remedy for violations of the Act."), *with Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1300–02 (5th Cir. 1995) (holding that "Congress did not intend to create a private remedy" for violations of 12 U.S.C. § 2609(a)); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982) ("Since we have been unable to find anything in the legislative history supporting [*Vega's*] conclusion, and in view of that court's cursory treatment of the issue in a short footnote, we do not find the Sixth Circuit's position persuasive."). Indeed, at least one district court within the Sixth Circuit has rejected *Vega* as non-binding dicta. *Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2008 WL 4206604, at *5 (E.D. Tenn. Sept. 10, 2008).

The Court declines to reach the issue because a narrower, dispositive ground exists: Ellis fails to allege facts showing that Defendants violated 12 U.S.C. § 2609(a). The subsection that Ellis has quoted in her Complaint places caps on the deposits Lenders can require from Borrowers for their escrow accounts. Ellis does not allege that Defendants forced her to deposit more than the maximum amount; rather, she takes issue with alleged mismanagement of her hazard insurance. Thus, even if she could sue pursuant to 12 U.S.C. § 2609(a), she has not stated a claim under that provision. Therefore, Count IV is dismissed.

Ellis' other RESPA claims arise under 12 U.S.C. § 2605. RESPA provides a three-year statute of limitations for such actions. 12 U.S.C. § 2614. The Court agrees with Defendants that this period has run on all of the alleged violations. (*See* Def.'s Br. at 15–16.) According to Ellis, the remaining RESPA claims rest on paragraphs 41–48, 152–75 and 181–84 of the Complaint. (Pl.'s Resp. Br. 14–15.) The non-conclusory allegations of these paragraphs state that Chase stopped making payments on an existing hazard insurance policy and replaced it with a more expensive policy, that Ellis purchased her own policy and challenged Chase's handling of the escrow account but that Chase did not respond, and that Ellis never received notice of the assignment of the mortgage. (*See* Compl. at ¶¶ 41–48; 152–75; 181–84.) All of these alleged violations occurred in 2010 or earlier. (*Id.*) But Ellis did not file her Complaint until February 28, 2014. (Compl.) Therefore, because the RESPA statute of limitations begins on "the date of the violation," 12 U.S.C. § 2614, her RESPA claims are now barred.

Ellis' argument that these actions constituted an "ongoing act of fraud" is not persuasive. (Pl.'s Br. at 15.) Ellis has not pled that any of the aforementioned acts were an ongoing occurrence, rather, she pled that they were discrete violations of the statute that occurred in 2010. That these individual acts might not have been corrected does not allow Ellis to restart the clock to bring her Complaint within the statute of limitations when she had notice of the violation in 2010. *See Page v. Metro. Sewer Dist. of Louisville & Jefferson Cnty.*, 84 F. App'x 583, 585 (6th Cir. 2003) ("Page's action is not preserved from dismissal under a continuing violation theory. . . . when an employee believes that he or she has been subjected to discrimination, the statute of limitations begins to run from the date the employee knew or should have known the act of discrimination occurred. Page admitted that she knew that the alleged act of discrimination occurred on October 17, 1996. . . . Her ongoing employment was insufficient to prolong the life

20

of her discrimination claim." (citation omitted)). Therefore, Counts V though IX and XI are dismissed.

### L.  Plaintiff has waived Counts III, X, XII, and XVIII

The Court finds that Ellis has abandoned Counts III, X, and XVIII. Aside from her admission that Counts III and X, both under the federal Truth in Lending Act, contain the same claim, Ellis did not respond to Defendants' motion to dismiss these two claims. Ellis also failed to respond to Defendants' motion with respect to Count XII, Negligent Administration of Loan, and Count XVIII, Tortious Interference with Contractual Relations. Accordingly, she has abandoned all four of these claims and they are dismissed. *Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned." (citing cases)); *see also Jones v. Nationstar Mortgage LLC*, No. 14-11642, 2014 WL 5307168, at *4 (E.D. Mich. Oct. 16, 2014); *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 957 (E.D. Mich. 2009).

### M. Count XIX – Civil Conspiracy

"[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (2003) (internal quotations omitted). Having dismissed all of Ellis' tort claims, the Court must dismiss the civil conspiracy claim in Count XIX because civil "conspiracy, by itself, is not a cause of action." *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *4 (E.D. Mich. Feb. 16, 2012).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that each of Ellis' twenty-two counts are either waived or fail to state a claim upon which relief can be granted. Accordingly, it is

21

ORDERED that Defendants' Motion to Dismiss (Dkt. 4) is GRANTED and Plaintiff's Complaint is DISMISSED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  December 16, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 16, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson
